**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| EDRANIKA ALLEN<br>    Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§<br>§ | CASE NO.  **23-1535** |
| WALMART INC.<br>    Defendant. | §<br>§<br>§<br>§ | **JURY TRIAL DEMANDED**<br>**SECT. G MAG. 4** |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

**COMES NOW**, Plainitff Edranika Allen ("Plaintiff") and accuses Walmart Inc. ("Defendant") of violating Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("Section 1981"), and shows the court the following:

### INTRODUCTION

1. Plaintiff brings this action pursuant to Title VII alleging race/color discrimination, sex discrimination, and hostile work environment.

2. Plaintiff brings this action pursuant to Section 1981 alleging race/color discrimination and hostile work environment,

### PARTIES

3. Plaintiff is an individual residing in Houston, Texas.

4. Defendant is a business corporation authorized to do business in the State of Louisiana and can be served process on its registered agent by mail or in person at C/O CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, Louisiana 70816.

### VENUE

TENDERED FOR FILING

MAY 04 2023

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

1

5. Venue is appropriate in the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b).

## JURISDICTION

6. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) under Title VII.

7. The unlawful employment practices were committed within the jurisdiction of this Court in Lafourche Parish, Louisiana.

## PROCEDURAL REQUISITES

8. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 9, 2022.

9. Plaintiff received a Notice of Right to Sue from the EEOC on February 7, 2023.

10. Plaintiff has filed this original action in this Court within 90 days from the date of Notice of Right to Sue.

## FACTS:

Upon information and belief, Plaintiff alleges as follows:

11. Plaintiff began her employment with Defendant on or around September 27, 2021.

12. Plaintiff was hired by Defendant to work as a Team Associate at Store #405 in Leeville, Louisiana.

13. On or around September 2021, I began to be subjected to sexual harassment by the new team lead, Charles (White, male).

14. Anytime a female employee would walk by he would make sure to touch them and me by whatever means such as grazing our hand or shoulders, placing his hand on our shoulders, etc.

2

15. One day I asked another associate if she thought he was weird, she responded with, "Yes, he told me to come out fishing with him. I told him I had a husband and he said to overlook it."

16. Another incident that took place throughout that period was with Diamond Wright, another coworker of mine who was 18 at the time. Charles would ask her to come for the closing shifts and opening shifts where she would stay very late or come in super earl and that he was touching her inappropriately.

17. I took two days off between February 25th, 2022, and February 28, 2022. When I got back to work, Charles approached me and asked me where I was and why I took those days off. He then proceeded to grab my forearm, pull me close into him, and he tried to write on my face with a marker. Charles then said just let me mark up your face, I yanked at him and said NO, what are you doing? I walked away and told the other cashiers this wasn't okay.

18. I reported the incident to another team lead, Michelle. Michelle told me to report the incident to the store manager right away as I was not the only person who felt uncomfortable, and she had to tell him not to touch her as well.

19. Joel was working on the floor at the time, so I pulled him to the side and recounted to him the events that had just taken place. He apologized multiple times, took me to the back room, and then asked me if I was still interested in being transferred. This caught me off guard for a second as I had never told Joel that I had requested a transfer to my supervisor for later that year, April.

20. For the remainder of that day, I was just moved to another department. The following day on March 5, 2022, I reported the incident to Rose Davis, HR, white and I filed a police report.

21. I told Joel and Debbie that I was not comfortable working with him and Debbie moved me to another area. This was on a Thursday. She told me to take my lunch and after do some price changes for the rest of the day. So, I went to take my lunch and Charles came behind me while I was getting me food from the deli. He came up behind me and bent down, put his hands on my lower back and whispered in my ear "why are you back here I need all my girls up front with me?"

22. I told him that I was on lunch and that I was doing price changes. He then said he will ask her about that because he don't like that he can't keep up with all his ladies.

23. After I got done with lunch I went back to Debbie and told her about that and she said she will see what area she will have me in tomorrow. I did my price changes and went home.

24. I did not go to work that following day because I was just to done with everything I've been through. I did come back Saturday and when I did, I saw that nothing was done about him and he was in the front like nothing ever happened.

25. I then went to Joel office and asked why was he still in the front and nothing was being done. Joel said it takes time I walked out of his office and I went to make a police report.

26. I told the police what happen and when the cop went up there to check it out and spoke with Asset Protection member, David. David had no clue. The cop called me back and said no incident was ever reported. I then had to go back up there to make another report due to no one reporting this to AP David.

4

27. Team Lead Michelle told me that another member of management told her that the members of management was passing my documentation around and laughing about it. The manager who told my TL this her name is Tiffany.

28. Following the incident, I got a text on or around March 7, 2022 from an unknown number, stating that they're from Walmart and that they were going to hurt my child.

29. The only thing Walmart offered me aside from the transfer/relocation was the employee assistant program which gave me a psychiatrist to talk to.

30. I used this resource three times. On the third call, it was a male who was questioning me. He asked me things along the line of how you even know it was sexual assault, etc.

31. Walmart then went on to place me on leave without pay for an entire month.

32. Additionally, I have been subject to discriminatory racial treatment.

33. Debbie, constantly referred to my skin tone when describing myself.

34. In September 2021, I was not receiving the appropriate pay. I approached Debbie and asked her about it and she rolled her eyes and said she will look into it. I reminded her that she had been saying this to me since I started and that It was not fair. At this time, another co-worker interjected in our conversation and stated "Debbie be busy so she can't get to me when I want."

35. I decided to walk away from the conversation when I heard Debbie say, "They are starting to get on my nerves. Her and her sister." The co-worker asked who is her sist. Debbie proceeded to say, "it's another one that's dark just like her, well you know, a black girl" and proceeded to laugh.

36. I did not address the situation, but I did speak with another Black co-worker, Ms. Ashley, who informed me that Debbie and others often refer to the black woman employees as "Black bitches."

37. In January of 2022, I complained to Joel about Debbie via a written statement. I told him I felt discriminated against, and she was withholding the pay I was promised. I informed him that it was other Black women who were also being mistreated by Debbie.

38. Joel apologized, stated he knew where I was coming from. Nothing was done from there.

39. In April 2022, I was transferred to my new store in Houston, Texas: store 1040.

40. I received a promotion to Asset Protection and was moved to another store in Houston, Texas: store 3640.

41. On October 23, 2022, Defendant unlawfully terminated Plaintiff.

## COUNT I: RACE/COLOR DISCRIMINATION UNDER TITLE VII

42. Plaintiff re-alleges and incorporates into Count I, paragraphs 1-41.

43. Defendant, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by Title VII, as amended.

44. Defendant, by and through its agents and employees, have maintained a policy of race/color discrimination in violation of the foregoing statute against Plaintiff.

45. If Plaintiff was not Black, he would not have been subjected to discriminatory treatment and would not have been terminated.

## COUNT II: SEX DISCRIMINATION UNDER TITLE VII

46. Plaintiff re-alleges and incorporates into Count II, paragraphs 1-45.

47. Defendant, by and through its agents and employees, intentionally engaged in the

aforementioned practices, policies, customs, and usages made unlawful by Title VII, as amended.

48. Defendant, by and through its agents and employees, have maintained a policy of sex discrimination in violation of the foregoing statute against Plaintiff.

49. If Plaintiff was not a woman, she would not have been subjected to discriminatory treatment and would not have been terminated.

## COUNT III: HOSTILE WORK ENVIRONMENT BASED ON SEX UNDER TITLE VII

50. Plaintiff re-alleges and incorporates into Court IV, paragraphs 1-49.

51. Defendant, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by ¬ß1981, and directly failed to protect Plaintiff from a hostile work environment.

52. Defendant, by and through its agents, have maintained a racially hostile work environment in violation of the foregoing statute against Plaintiff.

53. Defendant's actions, by and through its agents, are so severe and pervasive, it altered Plaintiff's terms, conditions, and privileges of employment.

54. Defendant was aware or should have known of the racially harassing policies and their implementation.

55. Defendant failed to protect Plaintiff from a hostile work environment by failing to take prompt remedial action to protect Plaintiff from racial harassment.

## COUNT IV: HOSTILE WORK ENVIRONMENT BASED ON RACE/COLOR UNDER TITLE VII

56. Plaintiff re-alleges and incorporates into Court IV, paragraphs 1-55.

57. Defendant, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by § 1981, and directly failed to protect Plaintiff from a hostile work environment.

58. Defendant, by and through its agents, have maintained a racially hostile work environment in violation of the foregoing statute against Plaintiff.

59. Defendant's actions, by and through its agents, are so severe and pervasive, it altered Plaintiff's terms, conditions, and privileges of employment.

60. Defendant was aware or should have known of the racially harassing policies and their implementation.

61. Defendant failed to protect Plaintiff from a hostile work environment by failing to take prompt remedial action to protect Plaintiff from racial harassment.

## COUNT V: RACE/COLOR DISCRIMINATION UNDER SECTION 1981

62. Plaintiff re-alleges and incorporates into Count I, paragraphs 1-61.

63. The statute located at 42 U.S.C. § 1981(a) provides that "[a] persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

64. Defendant, by and through their agents and employees, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 1981.

65. Plaintiff was terminated because of her race and color.

66. Had Plaintiff been a different race and a different color, she would not have been subjected to discrimination that caused Plaintiff to be terminated.

67. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by white individuals to the performance, enjoyment of, and any and all benefits and privileged, of her contractual relationship with Defendant in violation of 42 U.S.C. § 1981.

68. As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. § 1981, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorney's fees and costs.

### COUNT VI: HOSTILE WORK ENVIRONMENT UNDER SECTION 1981

69. Plaintiff re-alleges and incorporates into Court IV, paragraphs 1-68.

70. Defendant, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by § 1981, and directly failed to protect Plaintiff from a hostile work environment.

71. Defendant, by and through its agents, have maintained a racially hostile work environment in violation of the foregoing statute against Plaintiff.

72. Defendant's actions, by and through its agents, are so severe and pervasive, it altered Plaintiff's terms, conditions, and privileges of employment.

73. Defendant was aware or should have known of the racially harassing policies and their implementation.

74. Defendant failed to protect Plaintiff from a hostile work environment by failing to take prompt remedial action to protect Plaintiff from racial harassment.

### DAMAGES:

75. Plaintiff requests the court award her damages for the appropriate back pay with pre-and-post judgment interest in the amounts to be determined at trial.

76. Plaintiff request the court award her damages for future pay for the appropriate front pay in the amounts to be determined at trial.

77. Plaintiff requests the court award her damages lost employment benefits as a result of Defendant's violation of Title VII.

78. Plaintiff requests the court award her punitive damages.

79. Plaintiff requests the court award her any and all equitable relief as may be appropriate.

80. Plaintiff requests the court award her any and all costs of the action to be paid by Defendant.

81. Plaintiff requests the Court to grant such further relief as the Court deems necessary and proper.

## ATTORNEY'S FEES

82. Plaintiff has incurred and continues to accrue attorney's fees and costs in bringing this action by retaining the services of Stephen Rollins of Rollins Law, PLLC. Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## JURY DEMAND

83. Plaintiff demands a jury trial for all issues triable by a jury.

## PRAYER

84. **WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause, Plaintiff be granted the relief requested herein.

346·418·9562

Edranika Allew

14133 Champions Dr apt 135

Houston Tx 77069

## LAEDdb_ProSeDocs

| | |
|---|---|
| **From:** | Office Depot <noreply1@officedepot.com> |
| **Sent:** | Thursday, May 4, 2023 6:35 PM |
| **To:** | LAEDdb_ProSeDocs |
| **Subject:** | Edranika Allen |
| **Attachments:** | Office Depot Scan 05-04-2023_18-34-02-287.pdf |

CAUTION - EXTERNAL:

From: Here is your scanned attachment. With signed name and number.

Here is your scanned attachment. With signed name and number.

CONFIDENTIALITY NOTICE: The information contained in this email and attached document(s) may contain confidential information that is intended only for the addressee(s). If you are not the intended recipient, you are hereby advised that any disclosure, copying, distribution or the taking of any action in reliance upon the information is prohibited. If you have received this email in error, please immediately notify the sender and delete it from your system.
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1